**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES LIABILITY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 19-CV-677-GKF-JFJ |
| v. | ) | |
| | ) | |
| TROY PAUL, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S SURREPLY TO**
**PLAINTIFF'S REPLY IN SUPPORT**
**OF MOTION FOR SUMMARY JUDGMENT**

Defendant Troy Paul ("Paul") submits this surreply to the reply filed by Plaintiff United States Liability Insurance Company ("USLIC") on October 16, 2020 [Docket No. 41] (the "Reply").  The Reply contains a second motion for summary judgment—a new motion for summary judgment based on Exclusions M and U of the insurance contract between USLIC and Paul (the "USLIC Policy").  *See* Reply at 2 and 3.  For the reasons set forth herein, Paul objects to USLIC's new motion, and respectfully submits that USLIC's new motion should be denied.

**I.     USLIC HAS THE BURDEN OF PROOF WITH RESPECT**
**        TO THE EXCLUSIONS IN THE USLIC POLICY           **

USLIC argues that Exclusions M and U in the USLIC Policy control.  *See* Reply at 2-5.  Exclusion M has to do with "intentional acts."  *Id*. at 2.  Exclusion U has to do with "underlying insurance" for "offenses" resulting in "personal injury."  Reply at 3.[1]  USLIC did not mention Exclusions M and U in its first motion for summary judgment—Defendant, United States Liability

---

[1] Exclusion U says that USLIC will not provide coverage for a loss "[c]aused by an offense resulting in personal injury unless underlying insurance provides coverage for the loss."  Reply at 3.

Insurance Company's, Motion for Summary Judgment, filed July 20, 2020 [Docket No. 25] (the "First MSJ"). *See* First MSJ at 1-22.

USLIC has the burden of proof with respect to exclusions in the USLIC Policy. *See Boggs v. Great N. Ins. Co.*, 659 F. Supp. 2d 1199, 1204 (N.D. Okla. 2009); *State Farm Fire & Cas. Co. v. Aberdeen Enterprises II, Inc.*, No. 18-CV-654-TCK-FHM, 2020 WL 4550390, at *3 (N.D. Okla. Aug. 6, 2020). USLIC ignores its burden. USLIC seeks to substitute argument and *ipse dixit* assertions for evidence. *See* Reply at 2-5.

II. **USLIC'S NEW MOTION FOR SUMMARY JUDGMENT DOES NOT COMPLY WITH RULE 56 OF THE FEDERAL RULES OF CIVIL PROCEDURE AND THE LOCAL RULES OF THE UNITED STATES DISTRICT <u>COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA</u>**

A. <u>FED. R. CIV. P. 56</u>

USLIC's new motion for summary judgment is *not* based on a statement of numbered "undisputed facts." *See* Reply at 1-5. USLIC's new motion is *not* based on specifically described evidence that is part of a summary judgment record. *Id.* As a consequence, USLIC's new motion does *not* comply with the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 56 (c) ("Procedures") (incorporated herein by this reference).

USLIC's new motion is based on unsupported assertions and legal conclusions, not evidence. *See* Reply at 1-5. For example, USLIC asserts:

> There is no question that Paul's alleged conduct that was the subject of the Partin litigation was intentional.

Reply at 2 (no citation to the record). Paul objects to USLIC's failure to comply with FED. R. CIV. P. 56 (c). Paul respectfully submits that he should not be required to respond to *ipse dixit* assertions.

**B.    LCvR 56.1**

LCvR 56.1 (b) sets out the specific requirements for the "statement of undisputed facts" in a brief supporting a motion for summary judgment.  *See* LCvR 56.1 (b) (incorporated herein by reference).  USLIC did not comply with LCvR 56.1 (b).  Paul objects.

LCvR 56.1 (a) states: "Absent leave of Court, each party may file only one motion under Fed. R. Civ. P. 56."  The Reply is an unauthorized second motion for summary judgment.  *See* First MSJ.  Paul objects.

**III.    THE PARTIN CLAIMS ARE "COVERED."  PAUL
DID NOT ACT INTENTIONALLY.  PARTIN
CLAIMED TO HAVE SUFFERED A BODILY INJURY.**

**A.    PAUL DID NOT ACT INTENTIONALLY
VIS-À-VIS PARTIN**

USLIC relies entirely upon Partin's pleadings.  *See* Reply at 1-2.  Partin's characterizations of the claims in his pleadings do not control.

> The insurer has a duty to look behind the third party's allegations to analyze whether coverage is possible… the duty to defend cannot be limited by the precise language of the pleadings.

*First Bank of Turley v. Fidelity and Deposit Ins. Co. of Md.*, 1996 OK 105, 928 P.2d 298, 304-05, cited in Defendant's Amended Brief in Response to Plaintiff's Motion for Summary Judgment, filed September 15, 2020 [Docket No. 36] (the "Paul Brief") at 6-7 & n. 3.

Significantly, Partin sued Paul for negligent infliction of emotional distress.  *See* First MSJ at 9 (¶ 17) and Exhibit 18 thereto.  USLIC even acknowledges Partin's claim for "Negligent Infliction of Emotional Distress" in the letter that it sent to Paul on April 13, 2016 regarding the Partin claims.  *See* First MSJ—Exhibit 7 (Page USLIC000032).

Curiously, USLIC does not mention or acknowledge Partin's claim for *negligent* infliction of emotional distress in the Reply.  *See* Reply 1-5.

USLIC had an obligation to go behind Partin's pleadings and *investigate* Partin's claim.

> The insurer's defense duty is determined on the basis of information gleaned from the petition (and other pleadings), **from the insured and other sources available to the insurer at the time the defense is demanded** (or tendered)…

*First Bank of Turley*, 928 P.2d at 303-04 (emphasis added).

USLIC did not talk to Paul about the Partin claim.  If USLIC had spoken to Paul, USLIC would have learned that Paul did not intend to injure or harm Partin.  *See* Second Declaration of Troy Paul, dated December 6, 2020 (the "Second Paul Declaration"), at ¶¶ 3-7.  A copy of the Second Paul Declaration is attached hereto as Exhibit 1.

Paul is not saying that he *accidentally* had sex with Partin's wife.  Paul's conduct was *voluntary*.  Paul is saying that he did not intend to harm Partin, and that his conduct vis-à-vis Partin was not intentional.  *See Penley v. Gulf Ins. Co.*, 1966 OK 84, 414 P.2d 305, 309 (Irwin, J.).

> Negligent conduct that, **although voluntary**, produces an unexpected result will be deemed an "accident."  *See Penley v. Gulf Ins. Co.*, 414 P.2d 305, 309 (Okla. 1966) ("accident" occurred when employee mistakenly filled a motor grader with gasoline rather than diesel because he lacked "any intent to inflict injury or damage upon this property").

*Automax Hyundai South, L.L.C. v. Zurich American Ins. Co.*, 720 F.3d 798, 804 (10th Cir. 2013) (emphasis added).

### B.  PARTIN SUFFERED A PHYSICAL INJURY—A "BODILY INJURY"

In his brief in response to the First MSJ, Paul devoted substantial attention to the fact that Partin claims that he suffered a physical injury as a result of Paul's conduct.  *See* Paul Brief at 5-6 (¶ 17(a)) and 16, 18-22.  USLIC ignores the evidence, and—once again—offers *ipse dixit* assertions.  *See* Reply at 3 (paragraph in the middle of the page).

4

## IV.    THE SPILLERS CLAIMS ARE "COVERED"

### A.    "HUMILIATION"

As explained in the Paul Brief, Spillers sued Paul for "humiliation." *See* Paul Brief at 10, 12-14, 22-23. "Humiliation" is a covered claim. *See* First MSJ—Exhibit 1 at USLIC0000009 (¶¶ C and H) and USLIC0000010 (¶ K); Paul Brief at 16, 17, 19, and 21.

Among other things, Spillers was upset that Paul (allegedly) took other women on trips and bought them things (*e.g.*, vehicles, condos, breast augmentations). Paul did not engage in that conduct with other women (*i.e.*, women other than Spillers) in order to hurt Spillers. He did not intend to hurt—or humiliate—Spillers. *See* Second Paul Declaration at ¶¶ 3 and 8-12.

### B.    CONSTRUCTIVE FRAUD

Spillers also sued Paul for constructive fraud. *See* First MSJ—Exhibit 10 at GOODIN000150; Exhibit 11 at GOODIN000194; Exhibit 12 at GOODIN000386; and Exhibit 13 at GOODIN000406; Paul Brief at 5, 13 (¶ 28 (c)) and 23-24. Constructive fraud is not an intentional tort. *See, e.g., Chien v. Chen*, 759 S.W.2d 484, 495 (Tex. App.—Austin 1988, no writ); *Promotional Management Group, Inc. v. Hsieh*, No. SA-09-CV-367-XR, 2009 WL 2849630, at * 7 (W.D. Tex. Sept. 1, 2009).

Constructive fraud, as pleaded by Spillers, is a claim for damage to property—a "covered" claim. *See* Paul Brief at 23-24. USLIC ignores Spillers' constructive fraud claim. *See* Reply at 1-5.

### C.    DEFAMATION

Spillers also sued Paul in a Texas court for "disparagement," *i.e.,* defamation. *See* First MSJ—Exhibit 4 at GOODIN000020 (¶ 10-Point 3); Paul Brief at 24. Spillers asked for an injunction prohibiting "disparagement." *Id.* As Paul explained in his response to the First MSJ,

Texas does not permit injunctions as remedies in defamation cases.  *See* Paul Brief at 24 (citing authorities).

In the Reply, USLIC responds to Paul's discussion of "defamation" by asserting:

> Paul presents no evidence that this request by Spillers [*i.e.*, the request for injunction] was granted by the court or that Paul allegedly violated any such order.

Reply at 4.

With respect, Paul was under no obligation to provide evidence that an injunction had been granted by the Texas court, let alone to provide evidence that he—Paul—had violated an injunction.  Spillers could not have asked for an injunction in good faith without alleging facts that, if true, would show defamation.  *See* Paul Brief at 24.

USLIC's speculation about the defamation claim is "too little, too late."  USLIC did not investigate Spillers' defamation claim.  *See* Second Paul Declaration at ¶¶ 3, 8-12.  Paul's point, of course, is that (a) there was a defamation claim and (b) USLIC should have investigated that claim.  Spillers' defamation claim is "covered."  *See* Paul Brief at 24.

### D.    USLIC Did Not Do Its Duty With Respect to the Spillers Claims

USLIC chides Paul for abandoning

> his original coverage theory that Spillers' alleged malicious prosecution of her common law marriage claim against Paul was somehow covered under Paul's personal liability umbrella policy with USLIC [sic].

Reply at 5.

Paul was not required to analyze Spillers' claims—let alone, to *correctly* analyze Spillers' claims.  The insurer—USLIC—had a duty to analyze Spillers' claims.

The Tenth Circuit's analysis of *First Bank of Turley* is useful:

> An insurer providing liability coverage usually has two duties:  the duty to defend and the duty to indemnify.  Under Oklahoma law, the duty to defend is distinct from and broader than the duty to indemnify.  *Turley*, 928 P.2d at 303.  "An insurer has a duty to defend an insured whenever it ascertains the presence of facts that give rise to *the potential of liability* under the policy."  *Id.* (emphasis in original) (citations omitted).  "[T]here need not be a probability" that the insured will be entitled to indemnification.  *Id.* 303 n. 14 (emphasis omitted) (citation omitted).  The focus is on the facts of the incident not merely the allegations in the complaint.  *Id*. at 303 & nn. 13 & 15.  While the initial burden to request a defense is on the insured, once that request is received the insurer bears the burden of investigating the underlying facts and determining whether they trigger coverage.  *Id*. at 304.  The duty to defend is triggered by the facts reasonably available at the time the defense is demanded, not by the outcome of the lawsuit.  *Id*. at 303-05.

*Automax Hyundai South*, 720 F.3d at 804.

If USLIC had performed its duty with respect to the Spillers' claims, USLIC would have ascertained that facts were present that "g[ave] rise to *the potential of liability* under the policy."  *Id*. at 804 (emphasis in original).  Clearly, USLIC did *not* do its duty.

For the reasons set forth in this Part IV, the Spillers claims are "covered."  *And see* Part V, *infra*.

## V.   PAUL HAD "UNDERLYING COVERAGE" FOR THE PARTIN AND SPILLERS CLAIMS

Interestingly, USLIC *asserts* that it can rely upon Exclusion M and Exclusion U in the USLIC Policy because Paul does not have "underlying coverage."  *See* Reply at 2.  According to USLIC,

> Paul has failed to produce any evidence in this case that the Partin claim was covered by any underlying policy of insurance.

Reply at 2 & n. 1, citing USLIC Policy (otherwise no reference to the record).

If USLIC had investigated the Partin and Spillers claims, USLIC would have learned that Paul had insurance coverage pursuant to a policy issued by Privilege Underwriters Reciprocal

7

Exchange (the "PURE Policy").  A copy of the PURE Policy is attached hereto as Exhibit 2.  *See* Second Paul Declaration at ¶¶ 13-16.

The PURE Policy provides liability coverage of $300,000.  *See* PURE Policy at T PAUL 000140.  "Personal liability" coverage is described as follows:

> If a claim is made or a suit is brought against an **insured** for damages because of **personal injury** or **property damage** caused by an **occurrence** anywhere in the world to which this coverage applies, we will:
>
> 1.      Pay up to the liability coverage limit shown on your Declarations for damages for which an **insured** is legally liable.  We will not pay more than the liability coverage limit shown on your Declarations for any single **occurrence** regardless of the number of **insureds**, claims made or persons injured.  Damages include prejudgment interest awarded against an insured; and
>
> 2.      Provide a defense at our expense even if the suit is groundless, false or fraudulent.  You may choose counsel from a panel of firms that we have selected.  We reserve the right to assign counsel if a panel has not been selected in the jurisdiction that the suit is brought or the claim is made.  We may investigate and settle any claim or suit at our discretion.  Our duty to settle or defend ends when our liability coverage limit for the occurrence has been exhausted by payment of a judgment or settlement.  Costs of providing a defense, other than settlement payments, are in addition to the liability coverage limit.

PURE Policy at T PAUL 000168 (Section III.A) (emphasis in original).

"Personal liability" coverage is provided for "personal injuries."  The PURE Policy defines "personal injury" as follows:

> **Personal Injury** means injury or death arising out of one or more of the following:
>
> a.      **Bodily injury;**
> b.      Unlawful detention, false imprisonment or false arrest;
> c.      Shock or emotional distress;
> d.      Invasion of privacy;
> e.      Defamation, libel or slander;
> f.      Malicious prosecution;
> g.      Wrongful entry or eviction; or

> h.   Assault and battery when committed with the intent of
>      protecting persons.

PURE Policy at T PAUL 000149 (Section I) (emphasis in original).

Both the Partin claims for humiliation and the Spillers' claims for humiliation and defamation fall within the PURE Policy definition of "personal injury." The humiliation claims involve "shock or emotional distress."

*     *     *

USLIC sent Paul two letters regarding the Spillers claims. *See* First MSJ—Exhibits 7 and 17. Neither of the USLIC letters mentioned Exclusion M or Exclusion U in the USLIC Policy. *Id.*

USLIC has the burden of proof with respect to exclusions in the USLIC Policy. *See* Part I, *supra* (citing authority). USLIC has not met that burden with respect to Exclusion M and Exclusion U in the USLIC Policy.

## VI.   <u>CONCLUSION</u>

In Paul's view, there is no legitimate dispute regarding the existence of "coverage" for the Partin claims and the Spillers claims. *See* Parts I-V, *supra*; Paul Brief at 25-28, *especially* 25. In any event

> [t]he simple presence of a legitimate dispute [about coverage] does
> not necessarily end the inquiry.

*Buzzard v. Farmers*, 1991 OK 127, 824 P.2d 1105, 1109, quoted in Paul Brief at 25.

Significantly, USLIC does not acknowledge *Buzzard v. Farmers* or respond to Paul's argument based on *Buzzard v. Farmers*. *Compare* Paul Brief at 25-28 (arguments supported by facts and law) *with* Reply at 5 (Part III) (conclusory *ipse dixit* assertions).

*     *     *

9

For the reasons set forth herein, the second USLIC motion for summary judgment—that is, the new motion for summary judgment embedded in the Reply—should be denied. For the reasons set forth in the Paul Brief, the First MSJ should be denied.

Respectfully submitted,

/s/ Steven K. Balman
Jonathan E. Shook, OBA No. 17343
Steven K. Balman, OBA No. 492
SHOOK & JOHNSON, PLLC
7420 South Yale Avenue
Tulsa, Oklahoma 74136
Telephone: (918) 293-1122
Facsimile: (918) 293-1133

-and-

Matthew C. Goodin, OBA No. 19327
The Goodin Law Firm
201 North Broadway, Suite 111
Moore, Oklahoma 73160
Telephone: (405) 759-3100
Facsimile: (405) 759-3310

**ATTORNEYS FOR TROY PAUL**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 7th day of December, 2020, I electronically transmitted the attached document to the Clerk of the Court and using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants

Brian E. Dittrich
bdittrich@dittrichlawfirm.com

Matthew C. Goodin
mgoodin@goodinlawfirm.org

/s/ Steven K. Balman
STEVEN K. BALMAN

**IN THS UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES LIABLITY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 19-cv-677-GKF-JFJ |
| v. | ) | |
| | ) | |
| TROY PAUL, | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF TROY PAUL

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows under penalty of perjury:

1.     I am the Defendant in the captioned case. I am making this declaration under penalty of perjury and on the basis of direct personal knowledge.

2.     I bought insurance from United State Liability Insurance Company ("USLIC") with the expectation that I would receive insurance that would cover a broad variety of claims and a wide range of risks. I did not understand that my USLIC insurance would be limited to claims for single "accidents" that involved "bodily injuries" or individual "offenses" that involved "personal injuries."

3.     I have submitted insurance claims to USLIC for defense costs related to legal claims asserted against me in two cases—a case involving Destiny Spillers (the "Spillers Case") and a case involving Wesley Partin (the "Partin Case").

4.     No representative of USLIC has ever spoken to me about the Partin Case.

5.     I am engaged to be married to the former wife of Mr. Partin.

6.     I never intended to cause Mr. Partin harm or injury.

**EXHIBIT 1**

7.      If USLIC had conducted an investigation of the Partin Case, and asked me questions about that case, I would have explained that I never intended to cause Mr. Partin harm or injury.

8.      No representative of USLIC has ever spoken to me about the Spillers Case.

9.      I was never married to Ms. Spillers.

10.     I never intended to cause Ms. Spillers harm or injury.

11.     In particular, I never intended to harm or injure Ms. Spillers by my conduct with the former wife of Mr. Partin or with any other woman.

12.     If USLIC had conducted an investigation of the Spillers Case, and asked me questions about that case, I would have explained that I never intended to cause Ms. Spillers harm or injury.

13.     No representative of USLIC has ever spoken to me about the topic of "underlying insurance."

14.     I had "underlying insurance" coverage during the period May 15, 2015 to May 15, 2016.

15.     I had underlying insurance through a policy issued by Privilege Underwriters Reciprocal Exchange ("PURE"). A copy of the PURE insurance policy is attached to Defendant's Sur-reply as Exhibit 2.

16.     The copy of the PURE insurance policy at Exhibit 2 is a true and correct copy of such obtained from insurance agent, Stephens Insurance LLC, upon my request.

17.     Executed this 6 day of December, 2020.

_____
TROY PAUL

2



# High Value Homeowners Policy
*Declarations*

**Your Agent**
Stephens Insurance LLC
111 Center Street
Suite 1410
Little Rock, AR 72201
5013772000
105137000

Your Declarations summarizes your coverage and premium. Please read your policy, any attached forms and endorsements and your Declarations for a full description of your coverage.

**NAME & ADDRESS OF INSURED**
**TROY PAUL**
321 W CARRIER RD
ENID, OK 73701

Policy Number     **HO139006600**
Policy Period     **05/15/2015 To 05/15/2016 at 12:01 AM Standard Time**
Issuing Company     **Privilege Underwriters Reciprocal Exchange**
800 Corporate Drive, Suite 420
Fort Lauderdale, FL 33334
888-813-7873

---

**INSURED LOCATIONS**

LOCATION 1
321 W CARRIER RD
ENID, OK 73701

LOCATION 2
6305 East 85th ct
Tulsa, OK 74137

---

**EXHIBIT 2**

T PAUL 000139

# High Value Homeowners Policy
*Page 2*

**TROY PAUL**
Policy Number        **HO139006600**

---

321 W CARRIER RD
ENID, OK 73701

| COVERAGE | COVERAGE LIMIT |
|---|---|
| Dwelling | **$1,020,000** |
| Other Structures | **$50,000** |
| Contents | **$400,000** |
| Loss of Use | **Reasonable Expenses** |
| Liability | **$300,000** |
| Medical Payments | **$10,000** |
| **Location Premium** | **$3,773** |

**DEDUCTIBLE**

| | |
|---|---|
| Windstorm or Hail Deductible | **$51,000 (5% Of Dwelling Coverage Limit) per covered loss** |
| All Other Peril Deductible | **$50,000 per covered loss** |

**FORMS & ENDORSEMENTS**
The following forms and endorsements are attached for the location.

| NAME | FORM NUMBER | EDITION DATE |
|---|---|---|
| **Declarations Page** | PHVH-999-OK | 01/01/2011 |
| **Oklahoma Notice** | PURE-004-OK | 01/01/2011 |
| **Policy Contract** | PHVH-998-GEN | 07/01/2010 |
| **Special Provisions** | PHVH-997-OK | 01/01/2011 |
| **Additional Insured** | PHVH-012-GEN | 07/01/2010 |
| **Privacy Notice** | PHVH-038-GEN | 01/01/2012 |
| **Important Notice Regarding Flood Insurance** | PHVH-043-GEN | 03/01/2008 |
| **Consumer Disclosure Notice** | PURE-002 | 08/01/2008 |
| **FCRA Dispute Resolution Notice** | PURE-003 | 03/01/2009 |

**CREDITS & SURCHARGES**

| | |
|---|---|
| Year Built | **2001** |
| Year Renovated | |
| Protection Class | **9** |
| Construction Type | **Brick** |
| Flood Zone | **PRP - B/C/X** |
| Seasonal Surcharge | **No** |
| Rented to Others Surcharge | **No** |
| Vacancy Surcharge | **No** |
| Roof Covering | **Asphalt Shingle** |
| Roof Shape | **Hip** |
| Size of Home (Heated) | **4,548** |
| Central Reporting Burglar Alarm Credit | **Yes** |

T PAUL 000140

# High Value Homeowners Policy
*Page 3*

**TROY PAUL**
Policy Number          **HO139006600**

| | |
|---|---|
| Central Reporting Fire Alarm Credit | **Yes** |
| Guard Gated Community Credit | **No** |
| Residential Sprinkler System Credit | **No** |
| External Perimeter Security Protection Credit | **No** |
| Gas Leak Detector Credit | **No** |
| Lightning Protection System Credit | **No** |
| Full Time Live-in Caretaker Credit | **No** |
| 24 Hour Signal Continuity Protection Credit | **No** |
| Sprinkler System with Water Flow Alarm Credit | **No** |
| Permanently Installed Generator Credit | **No** |
| External Perimeter Gate Credit | **No** |
| Water Leak Detection Shut Off Device & Alarm Credit | **No** |
| Water Leak Detection Shut Off Device Without Alarm Credit | **No** |
| Auto Companion Credit | **No** |
| Excess Companion Credit | **No** |
| Jewelry and Art Companion Credit | **No** |
| PURE Marketing Group Credit | **N/A** |
| Low Temperature Monitoring Device Credit | **No** |

T PAUL 000141

# High Value Homeowners Policy
*Page 4*

**TROY PAUL**
Policy Number     **HO139006600**

6305 East 85th ct
Tulsa, OK 74137

| COVERAGE | COVERAGE LIMIT |
|---|---|
| Dwelling | $925,000 |
| Other Structures | $185,000 |
| Contents | $462,500 |
| Loss of Use | Reasonable Expenses |
| Liability | $300,000 |
| Medical Payments | $10,000 |
| **Location Premium** | $2,130 |

**DEDUCTIBLE**

| | |
|---|---|
| Windstorm or Hail Deductible | $46,250 (5% Of Dwelling Coverage Limit) **per covered loss** |
| All Other Peril Deductible | **$50,000 per covered loss** |

**FORMS & ENDORSEMENTS**
The following forms and endorsements are attached for the location.

| NAME | FORM NUMBER | EDITION DATE |
|---|---|---|
| **Declarations Page** | PHVH-999-OK | 01/01/2011 |
| **Oklahoma Notice** | PURE-004-OK | 01/01/2011 |
| **Policy Contract** | PHVH-998-GEN | 07/01/2010 |
| **Special Provisions** | PHVH-997-OK | 01/01/2011 |
| **Additional Insured** | PHVH-012-GEN | 07/01/2010 |
| **Privacy Notice** | PHVH-038-GEN | 01/01/2012 |
| **Important Notice Regarding Flood Insurance** | PHVH-043-GEN | 03/01/2008 |
| **Consumer Disclosure Notice** | PURE-002 | 08/01/2008 |
| **FCRA Dispute Resolution Notice** | PURE-003 | 03/01/2009 |

**CREDITS & SURCHARGES**

| | |
|---|---|
| Year Built | **2006** |
| Year Renovated | |
| Protection Class | **3** |
| Construction Type | **Frame** |
| Flood Zone | **PRP - B/C/X** |
| Seasonal Surcharge | **Yes** |
| Rented to Others Surcharge | **No** |
| Vacancy Surcharge | **No** |
| Roof Covering | **Asphalt Shingle** |
| Roof Shape | **Hip** |
| Size of Home (Heated) | **3,837** |
| Central Reporting Burglar Alarm Credit | **Yes** |

T PAUL 000142

# High Value Homeowners Policy
*Page 5*

**TROY PAUL**

Policy Number      **HO139006600**

| | |
|---|---|
| Central Reporting Fire Alarm Credit | **Yes** |
| Guard Gated Community Credit | **Yes** |
| Residential Sprinkler System Credit | **No** |
| External Perimeter Security Protection Credit | **No** |
| Gas Leak Detector Credit | **No** |
| Lightning Protection System Credit | **No** |
| Full Time Live-in Caretaker Credit | **No** |
| 24 Hour Signal Continuity Protection Credit | **No** |
| Sprinkler System with Water Flow Alarm Credit | **No** |
| Permanently Installed Generator Credit | **No** |
| External Perimeter Gate Credit | **No** |
| Water Leak Detection Shut Off Device & Alarm Credit | **No** |
| Water Leak Detection Shut Off Device Without Alarm Credit | **No** |
| Auto Companion Credit | **No** |
| Excess Companion Credit | **No** |
| Jewelry and Art Companion Credit | **No** |
| Low Temperature Monitoring Device Credit | **No** |

T PAUL 000143

# High Value Homeowners Policy
*Page 6*

**TROY PAUL**
Policy Number          **HO139006600**

---

| | |
|---|---|
| Total Premium | $5,903 |
| Surplus Contribution | $590 |
| Grand Total | $6,493 |

YOU WILL BE BILLED SEPARATELY FOR ANY PREMIUM DUE.

Authorized Company Representative

T PAUL 000144

# Oklahoma Notice

The following statement is added to the policy:

**WARNING:**

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy, containing any false, incomplete or misleading information, is guilty of a felony.

T PAUL 000145

# High Valued Homeowners Policy
*Page 1*

**Your High Value Homeowners Policy - Quick Reference**

| Policy Section | Beginning on Page |
|---|---|
| **SECTION I – DEFINITIONS** | **2** |
| **SECTION II – PROPERTY COVERAGE** | **6** |

A.  Perils Insured Against
B.  Coverage and Loss Settlement
C.  Additional Coverages
D.  Exclusions

| **SECTION III – LIABILITY COVERAGE** | **23** |
|---|---|

A.  Personal Liability
B.  Medical Payments to Others
C.  Additional Coverages
D.  Exclusions

| **SECTION IV – GENERAL PROVISIONS** | **29** |
|---|---|

This policy is issued by Privilege Underwriters Reciprocal Exchange (PURE), a reciprocal insurance company. By purchasing this policy, you are a Subscriber to PURE. You are subject to the Subscriber's Agreement and Power of Attorney. This is a non-assessable policy consistent with section 629.261, Florida Statutes. The liability of the Subscriber to PURE is limited to the costs associated with the insurance policies only. This is a participating policy and you are entitled to dividends as may be declared by PURE. PURE may annually allocate a portion of surplus to subscriber savings accounts. Amounts allocated to subscriber savings accounts remain a part of PURE's surplus. They may be used to support the operations of PURE. Your right to the balance in the subscriber savings account is limited as set forth in the Subscriber's Agreement.

**Insuring Agreement**

Privilege Underwriters Reciprocal Exchange will provide the insurance described in this policy in return for payment of the premium and compliance with all applicable provisions of the policy.

T PAUL 000146

# High Valued Homeowners Policy
*Page 2*

## SECTION I - DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and if the "named insured" is an individual, the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

In addition, certain words and phrases are defined below. When used throughout the policy the defined words will be bolded.

**Aircraft**
 **Aircraft** means any device used or designed for flight. **Aircraft** does not include model or hobby craft not used or designed to carry people or cargo.

**Bodily Injury**
 **Bodily Injury** means physical bodily harm, sickness or disease. This includes required care, loss of services and resulting death.

**Business**
 **Business** means a trade, occupation or profession engaged in on a full-time, part-time or occasional basis. **Business** also means any activity engaged in for money or other compensation. This does not include **incidental business**.

**Contents**
 **Contents** means personal property you or a **family member** own or possess. For any **residence premises** listed on your Declarations that is a condominium or cooperative, **contents** means;
  a. Personal property you or a **family member** possess;
  b. Improvements, betterments, installations or fixtures that you paid for or acquired along with the **residence premises**; and
  c. All property located within the boundaries of your unit which is your insurance responsibility under a corporation or association of property owners agreement.

**Deductible**
 **Deductible** means the amount you are responsible to pay for any covered loss we pay.

**Dwelling**
 **Dwelling** means the owned one or two family house at each location named on your Declarations. **Dwelling** is not a condominium or a cooperative.

**Family Member**
 **Family Member** means a person that lives in your household and is related to you by blood, marriage, domestic partnership registered under State law, or adoption.

T PAUL 000147

# High Valued Homeowners Policy
*Page 3*

---

### Fungi
**Fungi** means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products, produced or released by **fungi**.

### Hurricane
**Hurricane** means a storm system that has been declared a hurricane by the National Weather Service. The National Weather Service currently uses the Saffir/Simpson Hurricane Scale to categorize **hurricanes**. This scale specifies that a **hurricane** is a storm that originates in the tropics and results in either a sustained wind speed of at least 74 miles per hour or a storm surge of at least four feet above normal.

The duration of the **hurricane** includes the time period:
1. Beginning 24 hours before a declared **hurricane** makes landfall;

2. While that declared **hurricane** remains; and

3. Ending 24 hours after the declared **hurricane** is no longer present;

anywhere in the state where your **residence premises** is located.

### Incidental Business
The definition of **Incidental Business** depends upon where the **incidental business** is conducted.

    a. Away from your **residence premises**.
      **Incidental Business** means a self–employed business activity normally undertaken by persons under the age of 18 such as newspaper delivery, babysitting, caddying, and lawn care. Any of these activities must:

      1. Not yield gross revenues in excess of $10,000 in any year;
      2. Have no employees subject to any workers' compensation, disability benefits, unemployment compensation or other similar laws; and
      3. Conform to local, state, and federal laws; or

    b. At your **residence premises**.
      **Incidental Business** means a business activity, other than farming, conducted in whole or in part on your **residence premises** which must:

      1. Not yield gross revenues in excess of $10,000 in any year, except for the business activity of managing one's own personal investments, regardless of where the revenues are produced;
      2. Have no employees subject to any workers' compensation, disability benefits, unemployment compensation or other similar laws; and
      3. Conform to local, state, and federal laws.

T PAUL 000148

# High Valued Homeowners Policy
*Page 4*

**Incidental Business** includes the **business** of renting to others the **residence premises** listed on your Declarations.

**Insured**
    **Insured** means you or a **family member**. As respects SECTION III Liability, an **insured** also includes any individual or other legal entity given permission by you or a **family member** to use a vehicle or **watercraft** covered under this policy with respect to their legal responsibility arising out of its use.

**Landscaping**
    **Landscaping** means trees, shrubs or other plants on the grounds of your **residence premises**.

**Medical Expenses**
    **Medical Expenses** includes reasonable charges for:
        a.   medical;
        b.   surgical;
        c.   X-ray;
        d.   dental;
        e.   ambulance;
        f.   hospital;
        g.   professional nursing;
        h.   prosthetic devices; and
        i.   funeral services.

**Occurrence**
    **Occurrence** means an accident or offense, including continuous or repeated exposure to substantially the same general harmful conditions, which results in **bodily injury** or **property damage** during the policy period.

**Other Structures**
    **Other Structures** means outdoor structures on the grounds of your **residence premises** set apart from the **dwelling** by clear space. This includes structures connected to the **dwelling** by only a fence, utility line or similar connection.

**Personal Injury**
    **Personal Injury** means injury or death arising out of one or more of the following:
        a.   **Bodily injury;**
        b.   Unlawful detention, false imprisonment or false arrest;
        c.   Shock or emotional distress;
        d.   Invasion of privacy;
        e.   Defamation, libel or slander;
        f.   Malicious prosecution;
        g.   Wrongful entry or eviction; or

T PAUL 000149

# High Valued Homeowners Policy
*Page 5*

---

    h.   Assault and battery when committed with the intent of protecting persons.

**Property Damage**
> **Property Damage** means physical injury to, destruction of, or loss of use of tangible property.

**Reconstruction Cost**
> **Reconstruction Cost** means the lesser of the amount required at the time of the loss to repair or replace a structure at the same location with materials and workmanship of like kind and quality. **Reconstruction cost** does not include deduction for depreciation or any amount required to comply with the enforcement of any ordinance or law. It also does not include any amount required for the excavation, replacement or stabilization of land under or around a structure.

**Recreational Motor Vehicle**
> **Recreational Motor Vehicle** means a motorized land vehicle designed for use off public roads, not subject to motor vehicle registration or operator licensing, and which is used solely on your **residence premises**. **Recreational Motor Vehicle** includes a golf cart used as a means of travel about your residence, your residence community or a golf course for golfing purposes or community or other private activities. **Recreational Motor Vehicle** also includes vehicles used to assist the handicapped that are not designed for or required to be registered for use on public roads.

**Residence Premises**
> **Residence Premises** means any **dwelling**, **other structures** and grounds or any condominium unit, cooperative, or apartment which is listed on your Declarations and that you own or live in.

**Watercraft**
> **Watercraft** means a boat or craft principally designed to be propelled on, over or under water. A model boat or hobby craft not used or designed to carry people is not considered a **watercraft**.

T PAUL 000150

# High Valued Homeowners Policy
*Page 6*

## SECTION II – PROPERTY COVERAGE

**A. Perils Insured Against**

We insure against all risks of sudden and accidental direct physical loss or damage to your **dwelling, contents** and **other structures** unless an exclusion applies.

**B. Coverage and Loss Settlement**

**1. Dwelling**

For a covered loss we will pay the **reconstruction cost** for your **dwelling**, even if this amount is greater than the coverage limit shown for that location on your Declarations. However, the most we will pay is the coverage limit shown for that location on your Declarations if:

    a.  you do not begin to repair or rebuild your **dwelling** within two (2) years from the date of loss;

    b.  if you do not maintain at least the amount of coverage for your **dwelling** as previously agreed to, including any adjustments we make based on appraisals or revaluations; or

    c.  you do not repair or rebuild your **dwelling** at the same location.

**2. Other Structures**

For a covered loss we will pay the **reconstruction cost** for your **other structures**, even if this amount is greater than the coverage limit shown for that location on your Declarations. However, the most we will pay is the coverage limit shown for that location on your Declarations if:

    a.  the coverage limit shown for this location on your Declarations for your **other structures** is less than 20% of the coverage limit for your **dwelling**;

    b.  you do not begin to repair or rebuild your **other structures** within two years from the date of loss;

    c.  you do not maintain at least the amount of coverage for your **other structures** as previously agreed to, including any adjustments we make based on appraisals or revaluations; or

    d.  you do not repair or rebuild your **other structures** at the same location.

**3. Dwelling or Other Structures under Construction**

If at anytime during the policy period:

    a.  You are newly constructing your **dwelling** or **other structures**;

T PAUL 000151

# High Valued Homeowners Policy
*Page 7*

---

   b. You are constructing additions, alterations or renovations to the **dwelling** or **other structures** and as a result have temporarily vacated the **residence premises**; or

   c. You are constructing additions, alterations or renovations to the **dwelling** or **other structures** and the cost will exceed 10% of the coverage amount for your **dwelling** or **other structures**;

then the most we will pay for a covered loss is the **reconstruction cost** less depreciation, but not to exceed the coverage limit shown on your Declarations. We will pay this amount whether or not you actually repair or rebuild. You must still maintain at least the amount of coverage for your **dwelling** and **other structures** as previously agreed to, including any adjustments we make based on appraisals or revaluations. This will remain the loss settlement provision until all construction is completed, and you and we agree on the amount of coverage for your **dwelling** and **other structures**.

**4. Contents**

The most we will pay for a covered loss to **contents** is the lesser of the amount required to repair or replace the **contents** without application of depreciation up to the amount of coverage for **contents**. However, if the **contents** are obsolete or unusable as a result of their age or condition, depreciation will be applied.

The amount of coverage for **contents** depends on where the loss occurs. For a covered loss to **contents** that occurs;

   a. At a **residence premises** listed on your Declarations, we will pay up to the coverage limit for **contents** at that location for each covered loss. If after a covered loss to your **dwelling** and **contents** we pay more than the coverage limit for your **dwelling** because the **reconstruction cost** is higher than the insured limit, we will increase the **contents** coverage for the purposes of settling the loss, by the same percentage. This extension of coverage only applies if the **contents** limit on your Declarations is 50% of the **dwelling** limit or greater;

   b. At a **residence premises** insured under another policy, we will not pay any amount under this policy;

   c. At a **residence premises** that is not listed on your Declarations or insured under another policy, we will pay up to 10% of the **contents** limit shown on your Declarations for a loss caused by a peril other than a **hurricane**. We do not cover any loss caused by a **hurricane** in the state where the **contents** are located.

   However, if the **residence premises** has been acquired within the last sixty (60) days, we will pay up to the highest **contents** limit of any single **residence premises** listed on your Declarations.

T PAUL 000152

# High Valued Homeowners Policy
*Page 8*

d.  Away from a **residence premises**, we will pay up to the highest **contents** limit of any single **residence premises** listed on your Declarations.

5. **Deductible**

Unless otherwise noted in this policy, the base **deductible** or one of the special **deductibles** shown on your Declarations or by endorsement is the amount of a covered loss you will pay.

**Hurricane Deductible**

In the event of direct physical loss to property covered under this policy caused directly or indirectly by a **hurricane**, the Hurricane Deductible listed on your Declarations is the amount of the covered loss for **dwelling**, **other structures** and **contents** that you will pay. The Hurricane Deductible does not apply to coverage provided under **7. Loss of Use**. The Hurricane Deductible applies regardless of any other cause or event contributing concurrently or in any sequence to the loss.

**Waiver of Deductible**
For a covered loss caused by a peril other than a **hurricane** or earthquake that is greater than $50,000, we will waive the base **deductible.** This waiver of **deductible** only applies if the base **deductible** shown on your Declarations is $25,000 or less.

This waiver of **deductible** does not apply to special **deductibles** for **hurricane** or earthquake. This waiver of **deductible** also does not apply to a special construction **deductible**.

**Construction Deductible**
If at anytime during the policy period:

a.  You are newly constructing your **dwelling** or **other structures**;
b.  You are constructing additions, alterations or renovations to the **dwelling** or **other structures** and as a result have temporarily vacated the **residence premises**; or
c.  You are constructing additions, alterations or renovations to the **dwelling** or **other structures** and the cost will exceed 10% of the coverage amount for your **dwelling** or **other structures**;

then a special construction **deductible** of 5% of **dwelling** coverage will apply to each covered loss in lieu of a base **deductible**. This **deductible** applies to your **dwelling**, **other structures**, **contents**, and additional coverages. The dollar amount of this **deductible** is based on the **dwelling** coverage limit shown on your Declarations for that location at the time of the loss. This **deductible** does not eliminate any other special **deductibles** that may apply. If we otherwise give our prior written consent, the special construction **deductible** will not apply.

T PAUL 000153

# High Valued Homeowners Policy
*Page 9*

6. **Special Limits of Liability for Contents**
   These limits do not increase the amount of coverage for your **contents**. The special limit shown for each category below is the most we will pay for each covered loss to **contents** in that category.

   a. Money, bank notes, bullion, gold other than gold ware, silver other than silver ware, platinum - $2,500.
   This limit is increased to $10,000 for bank notes, bullion, gold other than gold ware, silver other than silver ware, platinum that are stored in a locked home safe located on the **residence premises** or in a bank vault or bank safe deposit box.

   b. **Watercraft**, including their trailers, furnishings, equipment and outboard engines or motors - $5,000.
   c. Trailers not used with **watercraft** -$5,000.
   d. Grave markers - $10,000.
   e. Securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, negotiable papers, passports, tickets - $5,000.
   f. Jewelry, watches, precious stones or semi precious stones, whether set or unset, that are lost, misplaced or stolen -$5,000.

   If your **residence premises** is a:

   **Dwelling**, this special limit is increased to $50,000 if your Declarations show a limit for **contents** coverage that is 50% or more of the coverage for your **dwelling**. However, the most we will pay for any one article is $25,000.

   Condominium unit, cooperative, or apartment, this special limit is $50,000. However, the most we will pay for any one article is $25,000.

   The limits described under f. do not apply if the items are stored in a bank vault or bank safe deposit box.

   g. Furs that are lost, misplaced or stolen - $5,000.
   h. Guns that are lost, misplaced or stolen - $5,000.
   i. Silverware, goldware, pewterware or trophies that are lost, misplaced or stolen - $10,000.

7. **Loss of Use**
   If a covered loss to your **dwelling** or **contents** makes the **residence premises** not fit to live in, we cover the following:

   a. Additional Living Expense:

T PAUL 000154

# High Valued Homeowners Policy
*Page 10*

(1) If the **residence premises** is your primary residence, we will pay the necessary reasonable increase in living expenses incurred by you so that your household can maintain its normal standard of living; or

(2) If the **residence premises** is not your primary residence, we will pay the necessary reasonable increase in living expenses incurred by you so that your household can maintain its normal standard of living for those periods of time that you had planned to use, or customarily use, the residence.

We cover this increase for the shortest reasonable amount of time required to restore your **residence premises** to a habitable condition, or if you permanently relocate, the shortest reasonable amount of time required for your household to settle elsewhere. This time period is not limited by the expiration of this policy.

b.  Fair Rental Value
The amount of rent shown on a signed lease agreement less any expenses that do not continue while the **residence premises** is not fit to live in.

Payment will be for the shortest reasonable time required to restore your **residence premises** to a habitable condition. This time period is not limited by the expiration of this policy.

Civil Authority
If you are forced to evacuate your **residence premises** or a civil authority prohibits you from use of the **residence premises**, we will reimburse you for the reasonable increase in living expenses incurred by you so that your household can maintain its normal standard of living for up to 30 days. The most we will pay for this coverage is $50,000.

**C.  Additional Coverages**
The coverages shown below are in addition to the coverage amount shown for that location on your Declarations unless otherwise indicated. Your **deductible** applies to these coverages unless otherwise indicated.  These coverages are subject to Special Limits of Liability and Exclusions.  Exclusions are defined in Section **D**.

**1.  Loss Assessment**
We will pay up to $50,000 for your share of a loss assessment charged against you during the Policy Period by a corporation or association of property owners. This coverage applies to loss assessments charged against you during the policy period, regardless of when the loss to the corporation or association of property owners occurred. This coverage only applies when the assessment is made as a result of a covered loss to the property owned by all members collectively. We will not pay for assessments made as a result of loss caused by or resulting from earthquake. We will pay your portion of an assessment charged as a result of an ensuing covered loss due

T PAUL 000155

# High Valued Homeowners Policy
*Page 11*

to theft, explosion, fire or glass breakage, unless another exclusion applies. A **deductible** does not apply to this coverage.

We will not pay more than $5,000 for any assessment that results from a **deductible** in your Association's insurance coverage.

2.  **Back Up of Sewers and Drains**
    We will pay up to the coverage limits shown on your Declarations for physical loss or damage to property caused by:

    (1) Water which backs up through sewers or drains; or

    (2) Water which overflows from a sump even if such overflow results from the mechanical breakdown of the sump pump.

    These payments do not increase your coverage amount.

3.  **Construction Materials**
    We will pay for a covered loss to materials and supplies owned by you at each location shown on your Declarations for use in the repair, alteration, or construction of your **residence premises**. These payments do not increase your coverage amount.

4.  **Data Replacement**
    We will pay up to $5,000 for expenses you incur to replace your personal data stored on a personal computer or portable computing device lost as a result of a covered loss.

5.  **Debris Removal**
    We will pay the reasonable expenses you incur to remove debris of covered property resulting from a covered loss from the **residence premises**.

    If the **residence premises** is a house, these payments increase the amount of your coverage by 10% of the **dwelling** limit shown on your Declarations. If the **residence premises** is a condominium, cooperative or apartment, these payments increase the amount of your coverage by 10% of the **contents** limit shown on your Declarations.

6.  **Ensuing Fungi or Bacteria**
    For a covered loss we will not pay more than $20,000 for each occurrence for all increased costs that are **fungi** or bacteria remediation expenses described below. This **fungi** or bacteria remediation expense limit does not increase your coverage amount.

    This **fungi** or bacteria remediation expense limit does not apply to **fungi** or bacteria resulting from a covered loss caused by fire or lightning.

    **Fungi** or bacteria remediation means the reasonable and necessary costs for:

T PAUL 000156

# High Valued Homeowners Policy
*Page 12*

---

   a. Testing and monitoring the air or property to confirm the absence, presence or level of **fungi** or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be paid only to the extent that there is a reason to believe that there is the presence of **fungi** or bacteria;

   b. Developing a **fungi** or bacteria remediation plan; and · implementing that **fungi** or bacteria remediation plan including the clean up, removal, containment, treatment, or disposal of **fungi** or bacteria;

   c. Tearing out and replacing any part of the building or other covered property as needed to gain access to the **fungi** or bacteria beyond that which is required to gain access to covered property physically damaged by a covered loss;

   d. Removing debris of covered property containing **fungi** or bacteria beyond that which is required to remove debris of the covered property physically damaged by a covered loss; and

   e. Repairing or replacing covered property containing **fungi** or bacteria beyond that which is required to repair or replace the covered property physically damaged by a covered loss.

**Fungi** or bacteria remediation expenses also includes up to a maximum of $5,000 for coverage for loss of use of your **residence premises** resulting from **fungi** or bacteria.

Loss of use means:

   a. The necessary reasonable increase in living expenses incurred by you so that your household can maintain its normal standard of living while your **residence premises** is uninhabitable; and

   b. For a **residence premises** that is rented out, the amount of rent shown on a signed lease agreement, less any expenses that do not continue, while the **residence premises** is uninhabitable.

$20,000 is the most we will pay regardless of the number of locations insured, or the number of claims. We will not make any additional payments for ensuing **fungi** or bacteria under any other part of this policy.

**7. Fire Department Service Charge**

We will pay the charges imposed by law or assumed in writing for fire department charges. This coverage applies when the fire department is called to save or protect a **residence premises** listed on your Declarations. Your **deductible** does not apply to this coverage.

**8. Food Spoilage**

We will cover food that is contained or stored in a refrigerator or freezer at your **residence premises** which spoils due to:

T PAUL 000157

# High Valued Homeowners Policy
*Page 13*

---

a. Changes or extremes in temperature caused by an interruption of the power supply; or

b. Caused by the mechanical or electrical breakdown of refrigeration equipment.

Food Spoilage does not include any loss to wine. These payments do not increase your coverage amount.

9. **Incidental Business Property**
We will pay up to $10,000 for a covered loss to property owned or leased by you and used for an **incidental business** conducted at a **residence premises** listed on your Declarations.

10. **Land**
We will pay up to 10% of the amount of a covered loss to your **dwelling** or **other structures** for the required stabilization, excavation, or replacement of land under or around your **dwelling** or **other structures**.

These payments do not increase your coverage amount for losses caused by or resulting from **a hurricane**.

11. **Landscaping**
We will pay for loss or damage to **landscaping** caused by:

a. fire or lightning;
b. explosion;
c. riot or civil commotion;
d. aircraft;
e. vehicles not owned or operated by a person who lives at the **residence premises**;
f. vandalism or malicious mischief; or
g. theft.

We will pay up to the greater of 5% of the coverage limit for **dwellings** or **contents** shown on your Declarations for the **residence premises** at which the covered loss occurs. The most we will pay for any one tree, shrub or plant is $5,000.

This additional coverage is only applicable if you begin to repair or replace the damaged **landscaping** within one hundred eighty (180) days of the date of loss.

12. **Lock Replacement**
If the keys to the **residence premises** listed on your Declarations are lost or stolen, we will pay for the cost to replace the locks to that **residence premises**. Your **deductible** does not apply to this coverage.

13. **Loss by Domestic Animals**

T PAUL 000158

# High Valued Homeowners Policy
*Page 14*

We will pay for loss to your **dwelling**, **other structures**, and **contents** caused by domestic animals.

### 14. Loss to a Pair or Set or Parts
For a covered loss to a pair or set, we will pay the lesser of:

    a.   The cost to replace any part to restore the pair or set to its value before the loss;

    b.   The cost to repair any part to restore the pair or set to its value before the loss; or

    c.   The difference between the market value of the pair or set before and after the loss.

However, if you agree to give us the remaining article(s) of the pair or set we will pay the full replacement cost of the entire pair or set.

These payments do not increase your coverage amount.

### 15. Mine Subsidence
We will pay for direct physical loss to your **dwelling** and **other structures** caused by mine subsidence. Mine subsidence means the lateral or vertical movement of a man-made underground mine or mine-related excavations.

### 16. Precautionary Repairs
We will pay the reasonable expenses incurred by you for the necessary measures taken to protect covered property that is damaged by a covered peril, from further damage.

These payments do not increase your coverage amount.

### 17. Property Removal
We will pay the reasonable expenses you incur to move **contents** from a **residence premises** to protect the **contents** from damage from a covered loss.

### 18. Property of Domestic Staff and Guests
We cover the personal property of your domestic staff and your guests located at the **residence premises** listed on your Declarations. These payments do not increase your coverage amount.

### 19. Rebuilding to Code
We will pay the necessary cost for you to comply with any law or ordinance requiring or regulating the:
a.   Construction;
b.   Demolition;
c.   Remodeling;
d.   Renovation; or
e.   Repair;

T PAUL 000159

# High Valued Homeowners Policy
*Page 15*

of a covered property damaged by a covered loss, including removal of any resulting debris. These payments do not increase your coverage amount.

This coverage only applies if you choose to repair, rebuild or replace your **dwelling**, **other structure**, or improvements and betterments at the loss location.

20. **Credit Card, Electronic Fund Transfer Card or Access Device, Forgery, and Counterfeit Money**
    We will pay up to $10,000 for:
    a. The legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards issued to or registered in an **insured's** name;
    b. Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an **insured's** name;
    c. Loss to an **insured** caused by forgery or alteration of any check or negotiable instrument; and
    d. Loss to an **insured** through acceptance in good faith any counterfeit paper currency.

    All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

    We may investigate and settle any claim or suit. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.  If a suit is brought against an **insured** for liability for **20**.a. and **20**.b. above, we will provide a defense at our expense by counsel of our choice. We have the option to defend at our expense an **insured** or an **insured's** bank against any suit for the enforcement of payment under **20**.c. above.

21. **Identity Fraud Expense Coverage**
    a. If you are a victim of "identity fraud" we will, with your consent, appoint and pay the full cost of, an identity fraud restoration specialist to restore your credit record and identity. Provided that we select the identity fraud restoration specialist we will pay the full cost of the specialist. If you choose a different method of restoring your credit record and identity, we will pay your "identity fraud expenses" up to a maximum of $25,000, for each individual identity fraud perpetrated. No **deductible** applies to this coverage.

       "Identity Fraud" means the act of knowingly transferring or using, without lawful authority, a means of identification of an **insured**. This must be done with the intent to commit, or to aid or abet another to commit, an unlawful activity that constitutes a violation of federal law or a crime under any applicable state or local law.

T PAUL 000160

# High Valued Homeowners Policy
*Page 16*

---

b. "Identity Fraud Expense" means:

(1) Costs for notarizing affidavits or similar documents attesting to fraud required by financial institutions or similar credit grantors or credit agencies;

(2) Costs for sending certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors;

(3) Lost wages as a result of time off from work to meet with law enforcement agencies, credit agencies, merchants or legal counsel or to complete fraud affidavits, up to $500 per week for a maximum of 2 weeks;

(4) Loan application fees for reapplying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information;

(5) Reasonable attorney fees incurred with our prior consent, as a result of "identity fraud" to:

    i. Defend lawsuits brought against an insured by merchants,  financial institutions, or their collection agencies;
    ii. Remove any criminal or civil judgments wrongly entered against an **insured**; and
    iii. Challenge the accuracy or completeness of any information in an **insured's** consumer credit report.

(6) Charges incurred for long distance telephone calls to merchants, law enforcement agencies, financial institutions or similar credit grantors or credit agencies to report or discuss an actual "identity fraud".

This coverage does not apply to losses covered under Credit Card, Electronic Fund Transfer Card or Access Device, Forgery, and Counterfeit Money. This coverage does not apply where an **insured** or someone acting at the direction of an **insured** commits a fraudulent, dishonest or criminal act, whether acting alone or in concert with others.

## 22. Loss Mitigation Measures
In the event of a covered loss, for which we pay  $10,000 or more, we will also pay for the reasonable costs you incur up to $2,500 for the installation of an approved loss mitigation measure or loss prevention device to protect your **residence premises** against a subsequent and similar loss in the future.  This additional coverage does not apply to losses that result from a **hurricane**.

T PAUL 000161

# High Valued Homeowners Policy
*Page 17*

Examples of approved loss prevention devices include, but are not limited to, fire alarm systems, fire suppression systems, security systems, sump pumps, automatic water shut-off devices, lightning suppression systems and back-up power systems.

These payments do not increase your coverage amount.

23. **Environmentally Friendly Upgrades**

In the event of a covered loss that exceeds your **deductible** we will pay up to $50,000 for additional costs incurred to use approved environmentally friendly materials, fixtures, appliances or methods in the necessary rebuilding, repairing or replacing of your **dwelling, other structures** or **contents**.

Examples of approved environmentally friendly materials, fixtures, appliances and methods include, but are not limited to, appliances and lighting, heating and cooling systems that meet Energy Star or equivalent levels of efficiency and building materials that are sustainably produced, responsibly harvested or composed of recycled content.

These payments do not increase your coverage amount.

24. **Tree Removal**

Unless covered elsewhere under this policy, we will pay up to a total of $1,500 for each occurrence to remove trees fallen due to wind, hail, sleet or the weight of ice or snow when the tree does not damage your **residence premises**.

Your **deductible** does not apply to this coverage. This waiver of **deductible** does not apply to special **deductibles** for **hurricane** or earthquake. This waiver of **deductible** also does not apply to a special construction **deductible**.

25. **Pet Injury**

We will pay up to $5,000 for each occurrence for any necessary **medical expenses** to domestic animals owned by, or in the care, custody and control of an **insured** that arises due to a covered loss. Your **deductible** does not apply to this coverage.

D. **Exclusions**

The following exclusions apply to **SECTION II – PROPERTY COVERAGE**.

1. **Aircraft**

We do not cover any loss to an **aircraft** or its parts, whether or not attached to the **aircraft**.

2. **Buildings Scheduled for Demolition**

T PAUL 000162

# High Valued Homeowners Policy
*Page 18*

We do not cover loss to **dwellings** or **other structures** that are scheduled for demolition, deconstruction or destruction. However, we will pay the cost of debris removal. A building is considered scheduled for demolition, deconstruction or destruction if a contract has been entered into, whether written or verbal, or plans have been drawn up to demolish the building within the next one hundred eighty (180) days.

**3. Business Property**

We do not cover any loss to **business** property, except **incidental business** property as defined in **C. Additional Coverages**.

**4. Governmental Action**

We do not cover any loss caused by governmental action. Governmental action means the destruction, confiscation or seizure by order of any government or public authority. This exclusion does not apply to such acts ordered by any governmental or public authority that are taken to prevent the spread of fire.

**5. Dishonest Acts**

We do not cover any loss caused by any dishonest or criminal act by you or a **family member**, or by a person directed by you or a **family member**.

**6. Earth Movement**

We do not cover any loss to your **dwelling** or **other structures** caused by earth movement. Earth movement means:

a. Earthquake, including land shock waves or tremors, before, during or after a volcanic eruption;
b. Landslides;
c. Mudflows;
d. Mudslides; and
e. the sinking, rising, or shifting of land.

However, we do insure ensuing covered loss due to theft, fire, glass breakage or explosion unless another exclusion applies.

**7. Faulty, Inadequate or Defective Planning**

We do not cover any loss caused by faulty, inadequate or defective:

a. Planning, zoning, development, surveying, siting;
b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
c. Materials used in repair, construction, renovation or remodeling; or
d. Maintenance;

T PAUL 000163

# High Valued Homeowners Policy
*Page 19*

of part or all of any property whether on or off the **residence premises**.

8. **Fungi, Wet or Dry Rot, or Bacteria**
   We do not cover any loss caused by the presence, growth, proliferation, spread or any activity of **fungi**, wet or dry rot, or bacteria. This includes the cost to test for, monitor, clean up, move, remediate, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of **fungi**, wet or dry rot, or bacteria.

   This exclusion does not apply to:

   a. Coverage provided under **SECTION II – PROPERTY COVERAGE, C. Additional Coverages, 6. Ensuing Fungi or Bacteria**;
   b. **Fungi** or bacteria resulting from fire or lightning unless another exclusion applies; or
   c. Ensuing covered loss unless another exclusion applies.

9. **Wear and Tear, Deterioration or Mechanical Breakdown**
   We do not cover any loss caused by:

   a. wear and tear, marring, deterioration;
   b. warping, rust or, other corrosion;
   c. wet or dry rot;
   d. mechanical breakdown;
   e. latent defect;
   f. inherent vice; or
   g. any quality in property that causes it to damage or destroy itself.

   However, we do insure ensuing covered loss unless another exclusion applies.

10. **Intentional Loss**
    We do not cover intentional loss. An intentional loss means any loss arising out of any act an **insured** commits or conspires to commit with the intent to cause a loss. This exclusion only applies to an **insured** who commits or conspires to commit an act with the intent to cause a loss.

11. **Loss by Birds, Vermin, Rodents or Insects**
    We do not cover any loss caused by birds, vermin, rodents or insects. However, we do insure ensuing covered loss unless another exclusion applies.

12. **Loss to Fish, Birds or Animals**
    We do not cover any loss to fish, birds or other animals.

    This exclusion does not apply to the extent coverage is provided under **SECTION II – PROPERTY COVERAGE, C. Additional Coverages, 25. Pet Injury**.

T PAUL 000164

# High Valued Homeowners Policy
*Page 20*

**13. Motorized Land Vehicles**

We do not cover any loss to a motorized land vehicle, other than a **recreational motor vehicle**.

**14. Nuclear Hazard**

We do not cover any loss caused directly or indirectly by nuclear hazard. Nuclear hazard means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. However, we do cover ensuing covered loss due to fire resulting from a nuclear hazard unless another exclusion applies.

**15. Pollution or Contamination**

We do not cover any loss caused directly or indirectly, regardless of cause or event, whether contributing concurrently or in any sequence to the loss, caused by the:

a. Discharge;
b. Dispersal;
c. Seepage
d. Migration;
e. Release; or
f. Escape

of "pollutants". "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16. Property of Others**

We do not cover any loss to property of roomers, boarders, or other tenants. This exclusion does not apply to property of roomers or boarders related to an **insured**.

**17. Renovations and Repairs**

We do not cover any loss caused by renovating, refinishing or repairing any kind of **contents**. This exclusion does not apply to jewelry, watches, and furs.

**18. Structural Movement**

We do not cover any loss caused by the settling, shrinking, bulging or expansion, including resultant cracking, of the following:

a. Bulkheads;
b. Pavements, patios;
c. Footings, foundations; or
d. Walls, floors, roofs or ceilings.

T PAUL 000165

# High Valued Homeowners Policy
*Page 21*

However, we do insure ensuing covered loss unless another exclusion applies.

### 19. War
We do not cover any loss caused directly or indirectly by war.  War includes the following and any consequence(s) of any of the following:

    a.   Undeclared war, civil war, insurrection, rebellion or revolution;
    b.   Warlike act by a military force or military personnel; or
    c.   Destruction, seizure or use for a military purpose

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

### 20. Watercraft
We do not cover any loss caused by the stranding, swamping or sinking of a **watercraft** or its trailer, or outboard motor. We also do not cover any loss caused by collision of a **watercraft** other than collision with a land vehicle unless another exclusion applies. We also do not cover any loss that results from a **hurricane** damaging a **watercraft.**

### 21. Surface and Ground Water
We do not cover any loss by surface or ground water. Surface or ground water means:

    a.   Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind; or

    b.   Water or water-borne material below the surface of the ground. This includes water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or **other structure**.

This exclusion does not apply to **contents** away from any **residence premises** or ensuing covered loss unless another exclusion applies.

### 22. Temperature, Dampness or Humidity
We do not cover any loss caused by extremes of temperature, dampness, humidity or dryness of atmosphere, or water vapor to your **dwelling, other structures** or **contents**. This exclusion does not apply to:

    a.   Loss caused directly by rain, sleet, snow or hail; or
    b.   Coverage provided under **SECTION II – PROPERTY COVERAGE, C. Additional Coverages, 8. Food Spoilage**.

### 23. Water Damage to Specific Other Structures
We do not cover loss to specific **other structures** caused by:
    a.   Freezing;

T PAUL 000166

# High Valued Homeowners Policy
*Page 22*

b.   Thawing;
c.   Pressure or weight of water or ice, whether driven by wind or not.

This exclusion applies to:
a.   fences, pavements, patios or tennis courts;
b.   swimming pools, hot tubs or septic systems;
c.   footings, foundations, bulkheads, retaining walls, or any structure or device that supports all or part of a building, or **other structure**; or
d.   piers, wharves, docks or bridges.

However, we do insure ensuing covered loss unless another exclusion applies.

**24. Water Damage as a Result of Failure to Maintain Heat**
We do not cover any loss caused by water freezing in plumbing, heating or air conditioning system or household appliance if you have not used reasonable care to maintain heat in your residence. This includes closing and draining the water system or appliances if the home is vacant, unoccupied or being constructed.

T PAUL 000167

# High Valued Homeowners Policy
*Page 23*

---

## SECTION III – LIABILITY COVERAGE

### A. Personal Liability

If a claim is made or a suit is brought against an **insured** for damages because of **personal injury** or **property damage** caused by an **occurrence** anywhere in the world to which this coverage applies, we will:

1. Pay up to the liability coverage limit shown on your Declarations for damages for which an **insured** is legally liable. We will not pay more than the liability coverage limit shown on your Declarations for any single **occurrence** regardless of the number of **insureds**, claims made or persons injured. Damages include prejudgment interest awarded against an **insured**; and

2. Provide a defense at our expense even if the suit is groundless, false or fraudulent. You may choose counsel from a panel of firms that we have selected. We reserve the right to assign counsel if a panel has not been selected in the jurisdiction that the suit is brought or the claim is made. We may investigate and settle any claim or suit at our discretion. Our duty to settle or defend ends when our liability coverage limit for the occurrence has been exhausted by payment of a judgment or settlement. Costs of providing a defense, other than settlement payments, are in addition to the liability coverage limit.

### B. Medical Payments to Others

We will pay the necessary **medical expenses** that are incurred or medically ascertained within three (3) years from the date of an accident causing **bodily injury**. The most we will pay is $10,000 per person. This coverage does not apply to you or a **family member**. This coverage applies only:

1. To a person on a **residence premises** with liability coverage listed on your Declarations with the permission of you or a **family member**; or

2. To a person off the **residence premises** if the **bodily injury**:

    a. Arises out of a condition at a **residence premises**, or the ways immediately adjoining a **residence premises**, listed on your Declarations with liability coverage;
    b. Is caused by the activities of an **insured**;
    c. Is caused by a domestic worker in the course of his or her employment by an **insured**; or
    d. Is caused by an animal owned by or in the care of an **insured**.

### C. Additional Coverages

We cover the following in addition to the liability coverage limit, unless stated otherwise:

T PAUL 000168

# High Valued Homeowners Policy
*Page 24*

1. **Claims Expenses**
   We will pay:

   a. Expenses we incur and court costs taxed against an **insured** in any suit we defend;
   b. Reasonable expenses incurred by an **insured** at our request. This includes actual loss of earnings (but not loss of other income) up to a total of $10,000, for assisting us in the investigation or defense of a claim or suit;
   c. Premiums on bonds required in a suit we defend. This does not apply to bond amounts more than the liability coverage limit shown on your Declarations.  We need not apply for or furnish any bond; and
   d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court, that part of the judgment which does not exceed the liability coverage limit.

2. **Damage to Property of Others**
   We will pay up to $10,000 per **occurrence** to repair or replace the property of others damaged by an **insured**. If your **residence premises** is a condominium, cooperative or apartment unit we will pay up to $25,000 per **occurrence** to repair or replace the property of others damaged by an **insured**.

D. **Exclusions**
   We do not provide coverage for damages, defense costs or any other cost or expense for:

   1. **Motorized Land Vehicles**
      **Personal injury** or **property damage** arising out of the:
      a. ownership;
      b. maintenance;
      c. operation;
      d. loading or unloading

      of any motorized land vehicle. This exclusion does not apply to **recreational motor vehicles** except when they are used for participation in or practice for competitive racing.

   2. **Aircraft**
      **Personal injury** or **property damage** arising out of the:
      a. ownership;
      b. maintenance;
      c. operation;
      d. use;
      e. loading;
      f. unloading; or

T PAUL 000169

# High Valued Homeowners Policy
*Page 25*

g.  towing

of any **aircraft**.

3.  **Watercraft**
**Personal injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading, or towing of any **watercraft**:

a.  That is over 26 feet in length or has more than 50 horsepower, other than **watercraft** furnished or rented to an **insured** for less than 30 days;
b.  Used for any **business** or commercial purpose; or
c.  Used for participation in or practice for competitive racing (this does not apply to sailing vessels less than 26 feet in length).

4.  **Workers' Compensation or Disability**
Any damages or benefits an **insured** is legally obligated to provide under any:

a.  workers' compensation;
b.  disability benefits;
c.  Jones Act or General Maritime Law;
d.  unemployment compensation;
e.  occupational disease; or
f.  similar law.

5.  **Directors Errors or Omissions**
**Personal injury** or **property damage** arising out of an **insured's** actions, errors or omissions as a director or officer of any corporation or organization. This exclusion does not apply to **personal injury** or **property damage** arising out of an **insured's** activities;

a.  For a Condominium or Cooperative Association; or
b.  For a not for profit corporation or organization.

6.  **Property in Your Care**
**Property damage** to property owned by, or in the custody, care or control of, an **insured**. This exclusion does not apply to **property damage**:

a.  Caused by fire, smoke or explosion; or
b.  To a residence that you rent to live in.

7.  **Insured**
**Personal injury** to you or an **insured** under this policy.

8.  **Discrimination**

T PAUL 000170

# High Valued Homeowners Policy
*Page 26*

**Personal injury** or **property damage** arising out of actual, alleged or threatened discrimination or harassment due to:

a. Age;
b. race;
c. national origin;
d. color;
e. sex;
f. creed;
g. handicapped status;
h. sexual preference; or
i. any other discrimination.

9. **Sexual Molestation, Corporal Punishment or Physical or Mental Abuse**
   **Personal injury** or **property damage** arising out of sexual molestation, corporal punishment or physical or mental abuse.

10. **Communicable Disease**
    **Personal injury** or **property damage** which arises out of the transmission of a communicable disease by an **insured**.

11. **Business**
    **Personal injury** or **property damage** arising out of or in connection with an **insured's business** property or **business** pursuits. However, this exclusion does not apply to:

    **Incidental business** property or **incidental business** pursuits; or

    a. **Personal injury** or **property damage** arising out of the physical condition of your **residence premises** when **business** or professional activities are legally conducted by any **insured** at that **residence premises** and;
    b. There are no employees conducting **business** activities at your **residence premises** who are subject to workers' compensation or other similar disability laws;
    c. You are not a home day care provider; and
    d. There is no other valid collectible insurance.

12. **Professional Services**
    **Personal Injury** or **property damage** arising out of the rendering of or failure to render professional services.

13. **War**
    **Personal injury** or **property damage** caused directly or indirectly by war, including any consequence of any of the following:

T PAUL 000171

# High Valued Homeowners Policy
*Page 27*

---

   a.  Undeclared war, civil war, insurrection, rebellion or revolution
   b.  Warlike act by a military force or military personnel; or
   c.  Destruction, seizure or use for a military purpose

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**14. Claims Settled Without Our Consent**
Any claim settled with a third party without our written consent regardless of the cause of loss, or any related expenses such as:
   a.  court costs;
   b.  legal expense; or
   c.  judgment,
when such settlement prejudices our rights to recovery.

**15. Nuclear Hazard**
**Personal Injury** or **property damage** caused directly or indirectly by nuclear hazard. Nuclear hazard means:

   a.  any nuclear reaction;
   b.  radiation; or
   c.  radioactive contamination

all whether controlled or uncontrolled or however caused.  We do cover subsequent loss due to fire resulting from a nuclear hazard unless another exclusion applies.

**16. Expected or Intended Injury**
**Personal injury** or **property damage** resulting from any criminal, willful, intentional, or malicious act or omission by any **insured** which is intended to result in, or would be expected by a reasonable person to cause **personal injury** or **property damage**. This exclusion applies even if the injury or damage is of a different kind or degree, or is sustained by a different person than expected or intended. This exclusion does not apply to **bodily injury** if the **insured** acted with reasonable force to protect any person or property.

**17. Wrongful Employment Act**
**Personal injury** arising out of wrongful termination of employment.

**18. Controlled Substances**
**Personal injury** or **property damage** arising out of the:
   a.  Use;
   b.  Sale;
   c.  Manufacture;
   d.  Delivery; or

T PAUL 000172

# High Valued Homeowners Policy
*Page 28*

e.   Transfer or possession

by any person of a controlled substance as defined under federal law.

Substances include but are not limited to cocaine, LSD, marijuana, and all narcotic drugs.

However, this exclusion does not apply to:

a.   The legitimate use of prescription drugs by a person following the order of a licensed physician; or
b.   The **insured(s)** who have no knowledge of the involvement with a controlled substance(s). An **insured's** knowledge of such involvement must be shown by us by competent evidence of such knowledge.

19. **Contract or Agreement**
**Personal Injury** or **property damage** arising from any contract or agreement entered into by an **insured**. However, this exclusion does not apply to any contracts:

a.   That directly relate to the ownership, maintenance, or use of an insured location; or
b.   Where the liability of others is assumed by you prior to an **occurrence**.

20. **Assessments**
Any assessment charged against an **insured** as a member of an association, corporation or community of property owners.

T PAUL 000173

# High Valued Homeowners Policy
*Page 29*

---

### SECTION IV– GENERAL PROVISIONS

**A. Insurable Interest**

Even if more than one person or party has an insurable interest in the property covered under this policy, we will not be liable in any one loss:

1. To an **insured** for more than the amount of such **insureds** interest at the time of loss; or
2. For more than the applicable limit of liability.

**B. Your Duties After a Loss**

In the event of a loss for which coverage may be provided under this policy, you or an **insured** or someone acting for an **insured** must:

1. Give prompt notice to us, any of our agents in this state or your agent. Any written notice given by any claimant to us or any of our agents in this state, containing particulars sufficient to identify the **insured**, will be deemed notice to us;

2. Notify the police in case of loss by theft;

3. Notify the credit card or electronic fund transfer card or access device company in case of loss under Credit Card, Electronic Fund Transfer Card or Access Device, Forgery, and Counterfeit Money coverage;

4. Protect the property from further damage. If repairs to the property are required, you must:
   a. Make reasonable and necessary repairs to protect the property; and
   b. Keep an accurate record of repair expenses;

5. Cooperate with us in the investigation of a claim, settlement or the defense of any claim or suit;

6. Prepare an inventory of damaged property. Show the quantity, description and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

7. As often as we reasonably require:
   a. Show the damaged property;
   b. Provide us with records and documents we request and permit us to make copies; and
   c. Submit to separate examination under oath;

T PAUL 000174

# High Valued Homeowners Policy
*Page 30*

---

8. Send to us, within sixty (60) days of our request, your signed, sworn proof of loss. The proof of loss must set forth, to the best of your knowledge and belief:
   a. The time and cause of loss;
   b. The interest of all **insureds** and all others in the property involved and all liens on the property;
   c. Other insurance which may cover the loss;
   d. Changes in title or occupancy of the property during the term of the policy;
   e. Specifications of damaged buildings and detailed repair estimates;
   f. The inventory of damaged **contents** described in 6. above;
   g. Receipts for additional living expenses incurred and records that support the fair rental value loss; and
   h. Evidence or affidavit that supports a claim under Credit Card, Electronic Fund Transfer Card or Access Device, Forgery and Counterfeit Money coverage, stating the amount and cause of loss;

9. Provide us with the names and addresses of any claimants and witnesses;

10. Promptly forward to us every notice, demand, summons or other process relating to the loss.

11. At our request, assist us:

    a. To make settlement;
    b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an **insured**;
    c. With the conduct of suits and attend hearings and trials; and
    d.  To secure and give evidence and obtain the attendance of witnesses; and

12. No **insured** shall, except as such **insured's** own cost, voluntarily make payment, assume obligation or expense other than for first aid to others at the time of an loss.

**C. Policy Term**
This policy applies only to a covered loss which occurs during the policy period.

**D. Recovered Property**
In the event we pay for a covered loss to property and the property is recovered, we will offer you an opportunity to buy it back.

**E. Assignment**
Assignment of this policy will not be valid unless we give our written consent.

**F. Waiver or Change of Policy Provisions**
A waiver or change of a provision of this policy must be in writing by us to be valid.  Our request for an appraisal or examination will not waive any of our rights.

T PAUL 000175

# High Valued Homeowners Policy
*Page 31*

**G. Concealment or Fraud**

We do not provide coverage to an **insured** who, whether before or after a loss, has:

   a.  Intentionally concealed or misrepresented any material fact or circumstance;
   b.  Engaged in fraudulent conduct; or
   c.  Made false statements;

relating to this insurance.

**H. Conformity to Law**

If any part of this policy conflicts with state or local law, this policy is amended to conform to those laws.

**I. Liberalization Clause**

If a change is made which broadens coverage under this edition of our policy without any premium charge, the change will automatically apply to your policy as of the date we made the change in your state.

**J. Bankruptcy**

Bankruptcy or insolvency of an **insured** will not relieve us of our duties under this policy.

**K. Death of an Insured**

In the event of the death of an **insured**, this policy will cover the legal representative of the deceased for the remainder of the Policy Period unless cancelled. We will cover the legal representative of the deceased only with respect to the premises and property of the deceased covered under this policy at the time of death.

**L. Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms of this policy. The action must be brought against us within five years after the date of loss. You may not bring any action until thirty days after proof of loss has been filed and the amount of loss has been determined.

**M. Mediation or Appraisal**

If you and we fail to agree on the amount of loss, either may:

   1.  Demand mediation of the claim, prior to taking legal action.  The request must state:
      a.  Why mediation is being requested; and
      b.  The issues in dispute which are to be mediated.

      Only one mediation may be requested for each claim, unless all parties agree to further mediation. A party demanding mediation shall not be entitled to demand or request mediation after a suit is filed relating to the same facts already mediated.

T PAUL 000176

# High Valued Homeowners Policy
*Page 32*

The parties must jointly appoint a mutually acceptable mediator. If the parties are unable to agree upon the appointment of a mediator within seven (7) days after a party has given notice of a demand to mediate the dispute, any party may apply to the JAMS Mediation Service, or such other organization or person agreed to by the parties in writing, for appointment of a mediator.

The mediator will notify the parties of the date, time and place of the mediation conference. This conference will be held within forty-five (45) days of the mediation request. If feasible, the conference may be held by telephone.

The mediation shall be conducted as an informal process and formal rules of evidence and procedure need not be observed.  Participants must:
    (1)  Have authority to make a binding decision; and
    (2)  Mediate in good faith.

If the mediator determines that both parties have mediated in good faith, the costs of the mediation shall be shared equally by both parties.

2.  Demand an appraisal of the loss. In this event, each party will choose a competent impartial appraiser with no financial interest in the outcome of the decision within twenty (20) days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within fifteen (15) days, you or we may request that the choice be made by a judge of a court of record in the state where the **residence premises** is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of the loss.

Each party will:

a.  Pay its own appraiser; and

b.  Bear the other expenses of the appraisal and umpire equally.

If, however, we demanded the mediation and either party rejects the mediation results, you are not required to submit to, or participate in, any appraisal of the loss as a precondition to action against us for failure to pay the loss.

## N. Other Insurance and Service Agreement
If a loss covered by this policy is also covered by:

T PAUL 000177

# High Valued Homeowners Policy
*Page 33*

1. Other insurance; we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

2. A service agreement; this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized by insurance.

If your **residence premises** is a condominium or cooperative and there is other insurance in the name of the condominium or cooperative association covering the same property we insure, the coverage afforded by this policy will be excess over the amount recoverable from that other insurance.

We will not pay for any loss for an item of jewelry, watch, or precious stone that is specifically scheduled and insured under another policy.

**O. Mortgage Clause**

1. If a mortgagee is named in this policy, any covered loss under **dwelling** or **other structures** coverages will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named in this policy, the order of payment will be the same as the order of precedence of the mortgages.

2. If we deny your claim that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

   c. Submits a signed, sworn statement of loss within sixty (60) days after receiving notice from us of your failure to do so.

3. If we decide to cancel or not renew this policy, we will notify the mortgagee at least thirty (30) days before the date cancellation or non-renewal takes effect.

4. If we pay the mortgagee for any loss and deny payment to you:

   a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

T PAUL 000178

# High Valued Homeowners Policy
*Page 34*

      b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

   5. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

## P. Cancellation

1. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

2. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

      a. When you have not paid the premium, we may cancel at any time by letting you know at least ten (10) days before the date cancellation takes effect.
      b. When this policy has been in effect for less than sixty (60) days and is not a renewal with us, we may cancel for any reason by letting you know at least ten (10) days before the date cancellation takes effect.
      c. When this policy has been in effect for sixty (60) days or more, or at any time if it is a renewal with us, we may cancel:

         (1) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or
         (2) If the risk has changed substantially since the policy was issued.

        This can be done by letting you know at least thirty (30) days before the date cancellation takes effect.

      d. When this policy is written for a period of more than one (1) year, we may cancel for any reason at anniversary by letting you know at least thirty (30) days before the date cancellation takes effect.

3. When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

4. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

## Q. Nonrenewal

T PAUL 000179

# High Valued Homeowners Policy
*Page 35*

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least thirty (30) days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

**R. No Benefit to Bailee**

We will not recognize any assignment or grant any coverage that benefits a person or organization holding storing or moving property for a fee regardless of any other provision in this policy.

**S. Subrogation**

1. We may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

2. If an assignment is sought, an **insured** must sign and deliver all related papers and cooperate with us.

3. Subrogation does not apply to **SECTION III - LIABILITY COVERAGE, B. Medical Payments to Others**, or to **SECTION III - LIABILITY COVERAGE, C. 2. Damage to Property of Others**.

4. If the **residence premises** is a condominium, we will waive any rights of recovery against the condominium association that operates the community in which the **residence premises** is located.

**T. Abandonment of Property**

We need not accept any property abandoned by an **insured.**

T PAUL 000180

# High Valued Homeowners Policy
*Page 36*

**Privilege Underwriters Reciprocal Exchange**
In witness whereof, we have caused this policy to be executed and attested, and if required by state law this policy shall not be valid unless countersigned by our authorized representative

Ross Buchmueller
President and CEO

If you would like to obtain information about your coverage or if you need assistance in resolving an issue relating to your insurance policies with us, please contact us at:

Privilege Underwriters Reciprocal Exchange
44 South Broadway, Suite 301
White Plains, NY 10601
(888) 813-PURE

Please include your name and policy number in any correspondence.

T PAUL 000181

# Special Provisions - Oklahoma

*This endorsement changes the policy. Please read it carefully.*

---

## SECTION I - DEFINITIONS

**Family Member** is replaced by the following:

**Family Member**
    **Family Member** means:
1. Residents of your household who are:
   a. Your relatives; or
   b. Other persons under the age of 21 and in the care of you or any person named above;

2. A student enrolled in school full time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:
   a. 24 and your relative; or
   b. 21 and in your care or the care of a person described in 1.a. above.

## SECTION II – PROPERTY COVERAGE

**B. Coverage and Loss Settlement, 5. Deductible** is replaced by the following:

**5. Deductible**

Unless otherwise noted in this policy, the base **deductible** or one of the special **deductibles** shown on your Declarations is the amount of a covered loss you will pay.

**Windstorm or Hail Deductible**

In the event of direct physical loss to property covered under this policy caused directly or indirectly by windstorm or hail, the Windstorm or Hail **deductible** listed on your Declarations is the amount of the covered loss for **dwelling, other structures** and **contents** that you will pay. The Windstorm or Hail **deductible** does not apply to coverage provided under **7.** Loss of Use. The Windstorm or Hail **deductible** applies regardless of any other cause or event contributing concurrently or in any sequence.

T PAUL 000182

# Special Provisions - Oklahoma

*Page 2*

---

**Waiver of Deductible**

For a covered loss caused by a peril other than windstorm or hail or earthquake that is greater than $50,000, we will waive the base **deductible**. This waiver of **deductible** only applies if the base **deductible** shown on your Declarations is $25,000 or less.

This waiver of **deductible** does not apply to special **deductibles** for windstorm or hail or earthquake. This waiver of **deductible** also does not apply to a special construction **deductible**.

**Construction Deductible**

If at anytime during the policy period:

    a.  You are newly constructing your **dwelling** or **other structures**;

    b.  You are constructing additions, alterations or renovations to the **dwelling** or **other structures** and as a result have temporarily vacated the **residence premises**; or

    c.  You are constructing additions, alterations or renovations to the **dwelling** or **other structures** and the cost will exceed 10% of the coverage amount for your **dwelling** or **other structures**;

then a special construction **deductible** of 5% of **dwelling** coverage will apply to each covered loss in lieu of a base **deductible**. This **deductible** applies to your **dwelling**, **other structures**, **contents**, and additional coverages. The dollar amount of this **deductible** is based on the **dwelling** coverage limit shown on your Declarations for that location at the time of the loss. This **deductible** does not eliminate any other special **deductibles** that may apply. If we otherwise give our prior written consent, the special construction **deductible** will not apply.

## SECTION IV– GENERAL PROVISIONS

**M. Mediation or Appraisal**, Paragraph 2. is replaced by the following:

    2.  Make written demand for an appraisal of the loss. In this event, only the party which demanded the appraisal will be bound by the results of that appraisal. Each party will choose a competent and impartial appraiser within 20 days after the written demand has been made. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, then, at the request of either you or us, after notice of hearing to the nonrequesting party by certified mail, the umpire shall be selected by a judge of a district court in the county where the loss occurred. The appraisers will separately set the amount of loss. If the appraisers submit a written report of agreement to us, the amount agreed upon will be the amount of loss and will be binding on that party which demanded the appraisal. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss and will be binding on that party which demanded the appraisal.

T PAUL 000183

# Special Provisions - Oklahoma

## *Page 3*

Each party will:

a.  Pay its own appraiser; and
b.  Bear the expenses of the appraisal and umpire equally.

**P. Cancellation**, paragraphs 2.b. and 2.c. are replaced by the following:

b.  When this policy has been in effect for less than forty five (45) business days and is not a renewal with us, we may cancel for any reason by letting you know at least ten (10) days before the date cancellation takes effect.
c.  When this policy has been in effect for forty five (45) business days or more, or at any time if it is a renewal with us, we may cancel for the following reasons:

  (1) Discovery of fraud or material misrepresentation in the procurement of this policy or with respect to any claims submitted thereunder;
  (2) Discovery of willful or reckless acts or omissions on the part of the you which increase any hazard insured against;
  (3) A change in the risk which substantially increases any hazard insured against after insurance coverage has been issued or renewed;
  (4) Violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to any **insured** property or the occupancy thereof which substantially increases any hazard insured against;
  (5) A determination by the Commissioner that the continuation of the policy would place the insurer in violation of the insurance laws of this state; or
  (6) Conviction of you of a crime having as one of its necessary elements an act increasing any hazard insured against.

This can be done by letting you know at least thirty (30) days before the date cancellation takes effect.

The following provisions are added:

## U.  Loss Payment

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment.

Loss will be payable:
1.  Within 60 days after we reach an agreement with you or there is a filing of an appraisal award with us; or
2.  Within 30 days after there is an entry of a final judgment.

## V.  Our Duties After Loss

T PAUL 000184

# Special Provisions - Oklahoma

## *Page 4*

It shall be our duty, after receiving a proof of loss, to submit a written offer of settlement or rejection of the claim, or notice of the need for more time to investigate the claim, to you within forty-five (45) days of receipt of the proof of loss.

All other provisions of this policy apply.

T PAUL 000185



# Additional Insured

*This endorsement changes the policy. Please read it carefully.*

All provisions and conditions of the policy apply unless they are altered by this endorsement.

Schedule
Name and Address of Person or Organization:

Paul Holding LLC
321 W Carrier Rd
Enid, OK 73701

It is agreed and understood that with respect to the following location:

321 W CARRIER RD
ENID, OK 73701

**SECTION I - DEFINITIONS, Insured,** is extended to include the person or organization named in the Schedule above, but only with respect to:

1. **Dwelling** and **Other Structures**; and
2. Personal Liability and Medical Payments to Others but only with respect to **bodily injury** or **property damage** arising out of the ownership, maintenance or use of the **residence premises**.

CANCELLATION AND NONRENEWAL NOTIFICATION
If we decide to cancel or not to renew this policy, the person or organization named in the Schedule will be notified in writing.

All other provisions of this policy apply.

T PAUL 000186



# Additional Insured

*This endorsement changes the policy. Please read it carefully.*

---

All provisions and conditions of the policy apply unless they are altered by this endorsement.

Schedule
Name and Address of Person or Organization:

Paul Holding LLC
321 W Carrier Rd
Enid, OK 73701

It is agreed and understood that with respect to the following location:

6305 East 85th ct
Tulsa, OK 74137

**SECTION I - DEFINITIONS, Insured,** is extended to include the person or organization named in the Schedule above, but only with respect to:

1. **Dwelling** and **Other Structures**; and
2. Personal Liability and Medical Payments to Others but only with respect to **bodily injury** or **property damage** arising out of the ownership, maintenance or use of the **residence premises**.

CANCELLATION AND NONRENEWAL NOTIFICATION
If we decide to cancel or not to renew this policy, the person or organization named in the Schedule will be notified in writing.

All other provisions of this policy apply.

T PAUL 000187



# Privacy Notice

*Important notice regarding your policy.*

Privilege Underwriters Reciprocal Exchange; ("PURE") recognizes the importance of respecting the privacy of our subscribers. We want to make sure that you know what steps we take to protect the privacy of the nonpublic personal customer information we collect. In some cases, as allowed by law, we also disclose customer information.

Please read the following information which details how we collect, disclose and protect your personal information. No action is required on your part.

## 1. What information do we collect?

PURE and the producers that represent us collect only the information necessary to underwrite insurance policies and provide accurate insurance rates. We also collect information to maintain and improve customer service and claims handling for our subscribers. We obtain nonpublic personal information about you, our policyholder, from you in your request for a quotation of rates, applications, policy transactions, including claims, and other transactions with us. We also obtain nonpublic personal information from credit reporting agencies, motor vehicle departments, claim history reporting agencies and other third parties. If you have property insurance with us, we may send someone to inspect your property to confirm information about the value and condition of your property.

The nonpublic personal information we collect may include your name, address, birth date, phone number, e-mail address, driver's license number, accident and violation history. We may also collect nonpublic personal information about vehicle operators, mortgages, lien or lease holders, vehicle information, credit card information, credit report information, occupation and whether you own or rent your residence. We obtain and use this information only as allowed by law.

We rely on the information our insured's and applicants supply us as our first source of information. We may also collect personal information from other legitimate and legal sources.

For example, during our normal underwriting procedures, we review the motor vehicle records that are obtained from state's Department of Motor Vehicles. We will review these records for all operators in your household. We will also review the claims history for your household from any prior insurance company or companies. These records are obtained from a nationally recognized consumer investigative firm.

## 2. What information do we disclose?

T PAUL 000188

# Privacy Notice
*Page 2*

We will not disclose any of your personal information that has been collected or received for the purposes of underwriting any insurance transaction, unless you (or any other affected person) approve of the disclosure, except as permitted by law in the following situations:

- to persons or organizations, where necessary, to assist in an insurance, professional, or business function for us; or, to allow the person or organization to assist us in determining your eligibility for our insurance or for the purposes of detecting insurance fraud;
- where necessary, to other agents, insurance support organizations or insurers, to complete an insurance transaction or to help in the detection of fraud or other illegal activities;
- to a medical professional or medical care institution to verify your insurance coverage or benefits or to alert an individual to a medical problem, or to conduct a service audit;
- to an insurance regulatory authority;
- to a governmental or law enforcement authority, where necessary, to protect the interests of the insurer or to the aid in an investigation of insurance fraud or other criminal activities;
- to facilitate research or actuarial studies;
- for marketing of selected  insurance services or products to selected insured's, although you may opt-out if you do not wish to have personal information released for marketing purposes;
- to any of our affiliated companies whose use of personal information will be for auditing or marketing purposes;
- to a group policyholder, when necessary to report claims experiences or to conduct audits of insurance transactions.

### 3. How can I find out what information you have about me?

At any time you can access any of your personal information that we may have. To do so, please submit a written request to us describing the information you want to review, and in your request; properly identify yourself so that we can release your requested information.  Once your request has been received, and if the information is reasonably retrievable and locatable, we will take one of the following actions, within 30 business days:

- inform you of the nature and substance of the recorded information;
- allow you to see and copy, in person, such recorded personal information; or
- send you a copy of the recorded personal information by mail. *(We may charge you a reasonable fee to cover the cost of this service.)*

T PAUL 000189

# Privacy Notice
*Page 3*

---

We will also tell you at this time the identity, if recorded, of persons to whom we have disclosed the personal information within the preceding two years.

**4. How can I correct information that is not accurate?**

If you ask us to correct, amend or delete any information about you, we will within 30 days, either correct, amend or delete the personal information in dispute or notify you of our refusal to take such action along with the reasons for our decision. If we make the correction, amendment or deletion you've requested, we will also notify you along with any person you designate who has received the information about you within the preceding two years, any insurance support organization(s) which provided us with the disputed information.

If we refuse to make the requested correction, amendment or deletion, you are permitted to file a concise statement setting forth what you think is the correct, relevant or fair information along with a statement of the reasons why you disagree with our refusal to correct, amend or delete the information subject to dispute. We will file your statement with the disputed personal information and make any person who reviews your file aware of your statement. We will also furnish your statement to any person who has received personal information from us with the two preceding years and any insurance support organization whose primary source of personal information is an insurer.

You should know that personal information obtained from a report prepared by any insurance support organization may be retained and disclosed to other persons in the future.

You can submit your request for additional information or your request to amend your information to:

Privacy Officer
Privilege Underwriters Reciprocal Exchange
44 South Broadway, Suite 301
White Plains NY 10601

**5. What security procedures do we use?**

We maintain physical, electronic and procedural safeguards that comply with state and federal regulations to protect the confidentiality of nonpublic personal information. We restrict access to nonpublic personal information to those employees who need to know that information to provide products or services to you. We take reasonable measures to ensure the companies we use as our business partners support our commitment to protecting the privacy of our subscribers in their handling of our subscriber's personal data.

T PAUL 000190

# Privacy Notice
*Page 4*

---

We require service providers and others to keep your information strictly confidential and to use the information solely on our behalf, and as directed by us, and we require them to protect this information as we would. We maintain physical, electronic and procedural safeguards to protect and safeguard your non public personal information.

### 6. Privacy and the internet

If you use the internet to access information on our website concerning our products and services, please read the Privacy Notice that appears at **www.pureinsurance.com/misc/privacy.**

T PAUL 000191



# Important Notice Regarding Flood Insurance

**IMPORTANT FLOOD INSURANCE NOTICE**

Your homeowners or dwelling policy does NOT provide coverage for loss caused by flood or mudslide, which is defined, in part, by the National Flood Insurance Program as:

> A general and temporary condition of partial or complete inundation of normally dry land areas from overflow of inland or tidal waters or from the unusual and rapid accumulation or runoff of surface waters from any source.

If you are required by your mortgage lender to have flood insurance on your property, or if you feel that your property is susceptible to flood damage, insurance covering damage from flood is available on most buildings and contents in participating communities through the National Flood Insurance Program.

Information about flood insurance and whether your community participates in the program can be obtained from your insurance company, from your insurance agent/broker, or directly from the <u>National Flood Insurance Program</u> by calling **1-800-638-6620**.

T PAUL 000192



# Consumer Disclosure Notice
*Page 1*

PURE is pleased to provide coverage according to the price and terms stated on the Declarations Page of your policy. The purpose of this notice is to share some important information with you.

We understand that as a good insurance risk you want to be rewarded with lower premiums. We use many factors in determining the price of your insurance, making the rate you pay commensurate with your individual situation.

One of the factors we consider in determining your premium is an insurance score, which is obtained from a consumer report. Due in part to your insurance score, your premium is not the lowest possible price. The primary factors in the consumer report that contributed to your insurance score are

1. # OF AUTO FINANCE ACCOUNTS ESTABLISHED
2. # OF COLLECTION AGENCY FILINGS
3. # OF DEROGATORY PUBLIC RECORD ITEMS
4. % OF ACCOUNTS REPORTED IN LAST 24 MONTHS TO TOTAL ACCOUNTS ON FILE

The consumer report we used to determine your insurance score was provided by a consumer reporting agency. You have the right to obtain a free copy of your consumer report within 60 days of receiving this notice. You also have the right to dispute incomplete or inaccurate information with them.

The consumer reporting agency name and contact information is:

ChoicePoint Consumer Service Center
P. O. Box 105108
Atlanta, Georgia 30348-5108
(800) 456-6004
www.consumerdisclosure.com
Reference Number: 15051131805022

Please note that this consumer reporting agency did not make any decision regarding your policy premium and is therefore unable to answer questions regarding your policy or premium determination.

If you would like to learn more about how we use insurance score to provide you the best possible price, please contact PURE Member Services at 1-888-814-7873.

T PAUL 000193



# Important Notice – Dispute Resolution Process Under the Federal Fair Credit Reporting Act (FCRA)

Under the FCRA, you have the right to obtain a free copy of your consumer report we used to determine your insurance score. You also have the right to dispute any incomplete or inaccurate information with the consumer reporting agency that provided the report.

If, after any reinvestigation of any information disputed by you, an item of the report is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency must promptly:

- Delete that item of information from your report, or modify that item of information, as appropriate, based on the results of the reinvestigation; and

- Notify the furnisher of that information and you that the information has been modified or deleted from your report.

We will then re-underwrite or re-rate your policy and shall make any adjustments necessary, consistent with our underwriting and rating guidelines within thirty (30) days of receiving notice from you.

Please also let us know if you feel your consumer report has been adversely influenced by extraordinary life events, including but not limited to catastrophic illness, injury, loss of employment, divorce, death of spouse, child or parent or identity theft. We will review the circumstances as reported by you or your agent and will request and review your consumer report.

If it is determined the extraordinary life event did directly influence your consumer report, your policy will be re-rated without using the insurance score that was based on your consumer report.

T PAUL 000194